UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
           :
PENDA RACHIDA KONDE,           :
           :
          Plaintiff,     :
           :    23 Civ. 4265 (JPC)
     -v-           :
           :    <u>OPINION AND ORDER</u>
           :
SUSAN RAUFER, in her official capacity as    :
Director of Newark Asylum Office, United States  :
Citizenship and Immigration Services,    :
           :
         Defendant.    :
           :
------------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

       Plaintiff Penda Rachida Konde, proceeding under the Mandamus Act, 28 U.S.C. § 1361, the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*, seeks to compel Defendant Susan Raufer, the Director of the Newark Asylum Office of the United States Citizenship and Immigration Services ("USCIS"), to schedule an interview on Plaintiff's asylum application, which has been pending since August 26, 2020. Defendant moves to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), arguing that this Court lacks subject matter jurisdiction over Plaintiff's mandamus claim and that Plaintiff has failed to state a claim under the APA. For the reasons that follow, the Court grants Defendant's motion and dismisses the Complaint in its entirety.

### I. Background

**A.    Statutory and Regulatory Framework**

       The Immigration and Nationality Act ("INA") permits any noncitizen "who is physically present in the United States or who arrives in the United States . . . irrespective of . . . status," to

apply for asylum. 8 U.S.C. § 1158(a)(1). To obtain relief, an asylum applicant must establish that she either experienced past persecution or has a well-founded fear of future persecution on account of her race, religion, nationality, membership in a particular social group, or political opinion. *Id*. §§ 1101(a)(42)(A), 1158(b)(1)(B)(i). The applicant also must establish that she warrants a favorable exercise of discretion. *Id.* § 1158(b)(1)(A). The INA instructs that, absent exceptional circumstances, an initial interview of an asylum applicant shall commence within forty-five days of the filing of the application and that adjudication of the application shall be completed within 180 days of its filing. *Id.* § 1158(d)(5)(A)(ii)-(iii). The INA further provides, however, that "[n]othing in [§ 1158(d)] shall be construed to create any substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers or any other person." *Id.* § 1158(d)(7).

**B.      Factual Background[1]**

Since January 31, 2018, USCIS has adjudicated asylum applications on a "last-in-first-out" ("LIFO") basis, "schedul[ing] asylum interviews for recent applications ahead of older filings." *See* U.S. Citizenship and Immigration Services, USCIS to Take Action to Address Asylum Backlog, https://www.uscis.gov/archive/uscis-to-take-action-to-address-asylum-backlog (last updated Feb. 2, 2018). USCIS reinstituted this LIFO policy, which was previously used for twenty

---

[1] The following facts are drawn from the Complaint, Dkt. 1 ("Complaint"), and Plaintiff's attached declaration, Dkt. 1-1 ("Konde Decl."). *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007) ("In considering a motion to dismiss for failure to state a claim upon which relief can be granted, the court is to accept as true all facts alleged in the complaint."). The Court also takes judicial notice of facts not subject to reasonable dispute, including those related to USCIS's asylum adjudication procedures, as set forth in documents from the agency's official website. *See Kravitz v. Tavlarios*, No. 20-2579-cv, 2021 WL 5365582, at *3 (2d Cir. Nov. 18, 2021) ("District Courts may take judicial notice of facts 'not subject to reasonable dispute' when they 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" (quoting Fed. R. Evid. 201(b)(2))).

years from 1995 to 2014, "to stem the growth of the agency's asylum backlog," to "deter those who might try to use the existing backlog as a means to obtain employment authorization[2]," and to "identify frivolous, fraudulent or otherwise non-meritorious asylum claims earlier and place those individuals into removal proceedings." *Id.*

Plaintiff, a native of Burkina Faso, submitted an asylum application, which was received by USCIS on August 26, 2020.  Complaint ¶ 5; Konde Decl. ¶ 1; Konde Decl. at 3 (USCIS notice acknowledging receipt of Plaintiff's asylum application), Konde Decl. at 5 (Plaintiff's employment authorization document showing country of birth).  In a letter dated January 11, 2022, USCIS's New York Asylum Office advised Plaintiff that her case had been transferred to the agency's Newark Asylum Office.  Konde Decl. at 6.  On January 25, 2022, Plaintiff was granted employment authorization, which was set to expire on January 24, 2024.  *Id.* at 5.  To date, an initial interview on Plaintiff's asylum application has yet to be scheduled.  *See* U.S. Citizen and Immigration Services, Case Status Online, https://egov.uscis.gov (Plaintiff's asylum application receipt number last searched on May 15, 2024); *see also* Konde Decl. at 3 (showing the receipt number of Plaintiff's asylum application); Complaint ¶¶ 6-7.  Plaintiff claims that she "has been aggrieved by [this] delay."  Complaint ¶ 11; *see also* Konde Decl. ¶ 4.

**C.     Procedural Background**

Having waited for nearly three years for her initial interview to be scheduled, Plaintiff commenced the instant action on May 23, 2023.  Dkt. 1.  In her sparse, two-and-a-half-page, twelve-paragraph Complaint, Plaintiff claims that Defendant "owes [her] a duty to schedule her asylum interview, pursuant to the INA, its implementing regulations, and its own internal

---

[2] An alien whose asylum application has been pending for 150 days is eligible to apply for employment authorization, renewable in two-year increments.  *See* 8 C.F.R. § 208.7(b).

procedures, but has unreasonably failed to perform that duty." Complaint ¶ 10. Plaintiff further asserts that the "legal basis of this claim stems from the Administrative Procedure Act" and requests relief under that Act, as well as under the Mandamus Act and the Declaratory Judgment Act. *Id.* ¶ 8. As relief, Plaintiff asks this Court to "[c]ompel [Defendant] to schedule [Plaintiff]'s asylum interview." *Id.* ¶ 12.

On September 5, 2023, Defendant moved to dismiss the Complaint for want of jurisdiction and for failure to state a claim. Dkts. 12-14, 15 ("Motion"). Plaintiff opposed the motion on September 22, 2023, Dkt. 16 ("Opposition"), and Defendant replied on October 3, 2023, Dkt. 17 ("Reply").

## II. Legal Standards

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). Plaintiff bears the burden of establishing this Court's subject matter jurisdiction "in the same way as any other matter on which [it] bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Where the Rule 12(b)(1) motion raises a facial challenge—that is, one based solely on the allegations of the complaint (and any attached exhibits)—the Court assumes as true all facts from the complaint and the attached exhibits and construes all reasonable inferences in the plaintiff's favor. *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  Although the Court must "accept[] as true the factual allegations in the complaint and draw[] all inferences in the plaintiff's favor," *Biro v. Condé Nast*, 807 F.3d 541, 544 (2d Cir. 2015), it need not "accept as true legal conclusions couched as factual allegations," *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475-76 (2d Cir. 2009) (citation omitted).

### III.  Discussion

In moving to dismiss the Complaint in its entirety, Defendant contends that Plaintiff has failed to state a cognizable claim under the APA and further that this Court lacks subject matter jurisdiction over Plaintiff's mandamus claim.  The Court agrees on both accounts.

**A.    APA Claim**

The APA provides for judicial review to compel agency action that is "unreasonably delayed."  5 U.S.C. § 706(1).  The "[r]esolution of a claim of unreasonable delay is ordinarily a complicated and nuanced task requiring consideration of the particular facts and circumstances before the court."  *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003).  In assessing the reasonableness of delay, courts apply the six factors set forth in *Telecommunications Research and Action Center v. FCC* ("*TRAC*" and the "*TRAC* Factors"):

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the

> court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

750 F.2d 70, 80 (D.C. Cir. 1984) (internal quotation marks omitted).  Significantly, "the Supreme Court has held that evidence of the passage of time cannot, standing alone, support [a claim for unreasonably delayed administrative action]." *Espin v. Gantner*, 381 F. Supp. 2d 261, 266 (S.D.N.Y. 2005) (citing *INS v. Miranda*, 459 U.S. 14, 19 (1982)).

Yet, the mere passage of time is the *sole* factual basis Plaintiff offers with any specificity in urging that USCIS's delay in adjudicating her asylum application is unreasonable. *See generally* Complaint.  That single allegation is plainly insufficient to support a cognizable APA claim.  Moreover, consideration of the relevant *TRAC* factors further warrants dismissal of the claim.

Turning to the first *TRAC* Factor, the Court joins the chorus of judges in this Circuit finding that the time USCIS takes to adjudicate asylum applications through its LIFO policy is governed by a rule of reason.  *See, e.g.*, *Xu v. Cissna*, 434 F. Supp. 3d 43, 53 (S.D.N.Y. 2020) ("It is true that the LIFO rule forces asylum applicants who filed earlier to bear the brunt of those delays.  But this is a byproduct of a reasoned attempt to address mounting issues with the asylum application process."); *Zhang v. Wolf*, No. 19 Civ. 5370 (DLI), 2020 WL 5878255, at *5 (E.D.N.Y. Sept. 30, 2020) ("[T]he Court finds that, under the present circumstances, the first and second *TRAC* factors support Defendants' position that the adjudication of asylum applications pursuant to LIFO is a rule of reason."); *Liu v. Wolf*, No. 19 Civ. 410 (PGG), 2020 WL 2836426, at *8 (S.D.N.Y. May 30, 2020) ("[T]his Court cannot find that the LIFO policy does not constitute a 'rule of reason.'").  As earlier discussed, USCIS implemented the LIFO policy in January 2018 to address the enormous backlog of asylum applications it was then facing, to deter efforts to exploit that backlog as a means of obtaining employment authorization given that an alien is eligible to secure such authorization after her asylum application is pending for 150 days, *see supra* n.2, and to allow

USCIS to filter out frivolous or fraudulent asylum claims earlier. The Court discerns no basis to find that such a policy defies reason.[3]

Under the second *TRAC* Factor, the Court additionally considers the statutory scheme, which "may supply content for [the first factor's] rule of reason." *TRAC*, 750 F.2d at 80. To be sure, the INA specifies a timetable promoting the prompt adjudication of asylum applications. 8 U.S.C. § 1158(d)(5)(A)(ii)-(iii). Yet Congress expressly declined to create any substantive or procedural right to enforce adjudication of an asylum application within that timeframe. *Id.* § 1158(d)(7). Accordingly, "[a]s the weight of authority on this issue has found, the timetables contained in § 1158(d)(5)(A) do not interfere with finding that the LIFO rule provides a rule of reason, insofar as Congress's decision not to structure the statute as creating a procedural right or benefit to enforce the timetables rendered them non-binding." *Chen v. Wolf*, No. 19 Civ. 9951 (AJN), 2020 WL 6825681, at *5 (S.D.N.Y. Nov. 20, 2020); *see also Xu*, 434 F. Supp. 3d at 53 (declining to "ascribe much significance to this timetable [provided by § 1158(d)]" because the timetable "is not mandatory").

---

[3] Plaintiff counters that that the LIFO system cannot be considered reasonable because the backlog of affirmative asylum applications has more than doubled from 311,000 pending cases in January 2018 to 667,040 pending cases as of December 31, 2022, citing a letter from the Director of USCIS to a Member of Congress. Opposition at 6 (citing Letter from Ur M. Jaddou, Dir., U.S. Citizenship & Immigr. Servs., to Rep. Andy Barr 1 (Feb. 17, 2023), available at https://www.uscis.gov/sites/default/files/document/foia/Asylum_backlog-Representative_Barr.pdf (last accessed May 15, 2024)). Initially, Plaintiff failed to allege these facts in her Complaint. But, to the extent Plaintiff asks this Court to consider that exchange and to assume true the veracity of the contents of that letter, the USCIS Director further explained therein that the LIFO policy "has proven to be effective in slowing the growth of the affirmative asylum receipts and the pending caseload." *Id.* Indeed, it is the *rate* of growth of the backlog—not the sheer growth of the backlog—that measures the efficacy of the LIFO policy. *See, e.g.*, *Zhang*, 2020 WL 5878255, at *5 (explaining that the slowing growth of the backlog after USCIS reinstituted the LIFO policy in 2018 suggested that this system was an effective, reasoned response to addressing issues with the asylum application process (citation omitted)).

The third and fifth *TRAC* Factors concern the impact on human health and welfare and the nature and extent of interests prejudiced by the delay. On this score, Plaintiff alleges only that she has been "aggrieved" by the delay. Complaint ¶ 11.[4] While the Court is empathetic to Plaintiff's position and can readily infer how several years in limbo might generally take a toll on an asylum applicant, "this sort of prejudice is inherent in the asylum application process." *Xu*, 434 F. Supp. 3d at 54. Plaintiff has not alleged any specific injury to her health or welfare and has not explained why the Court should compel USCIS to expedite her asylum application in particular. The Court also notes that Plaintiff is permitted to live in the United States without fear of removal to her home country, and that Plaintiff has successfully sought employment authorization, which she may renew (if she has not done so already) while waiting for adjudication of her asylum application.

Under the fourth *TRAC* Factor, the Court considers the effect of expediting delayed action on agency activities of a higher or competing priority. Defendant contends that judicial intervention in this case would result in both unwarranted "line-skipping" and preferential treatment for those with the means to hire counsel. Motion at 13. The Court agrees, finding no basis to single out Plaintiff's case for expedited resolution, where so many are deserving of prompt adjudication. *See Xu*, 434 F. Supp. 3d at 55 ("The effect of leapfrogging Plaintiff's application to the front of the line would do nothing to cure the deficiencies of the asylum application process; it would only harm other applicants, who are equally deserving of prompt adjudication."). Plaintiff's insistence that she "is not cutting the line but rather trying to maintain the integrity of the line, such

---

[4] In her Opposition, Plaintiff further contends that she has "endured profound emotional and psychological anguish throughout extended spells of ambiguity, wherein she is unable to progress in life, unable to find solace, and unable to attain resolution for past ordeals." Opposition at 7. Once again, Plaintiff, who has been assisted by counsel since the onset of this litigation, failed to include such allegations in her Complaint. In any event, these generalized allegations do not alter the Court's conclusion.

that the older applications are adjudicated before earlier filed applications," Opposition at 8, fails to persuade, as she merely attempts to substitute her own notion of integrity as to the asylum application process for that of the agency.  As discussed at *supra* I.B, the LIFO policy was implemented in part to deter exploitation of the current backlog for purposes of obtaining employment authorization and to allow USICS to filter out frivolous or fraudulent asylum claims earlier—aims, which, from the perspective of USCIS, preserve the system's integrity.  *See* U.S. Citizenship and Immigration Services, USCIS to Take Action to Address Asylum Backlog, https://www.uscis.gov/archive/uscis-to-take-action-to-address-asylum-backlog (last updated Feb. 2, 2018) ("Lingering backlogs can be exploited and used to undermine national security and the integrity of the asylum system.").

In these circumstances, Plaintiff has failed to state a claim under the APA on the grounds that the adjudication on her asylum application, which has been pending now for almost four years, has been unreasonably delayed.  *Cf. Xiaobin Xu v. Nielsen*, No. 18 Civ. 2048 (BMC), 2018 WL 2451202, at *2 (E.D.N.Y. May 31, 2018) (concluding that the plaintiff failed to state a claim for unreasonable delay where his asylum application had been pending for nearly five years); *Saleh v. Ridge*, 367 F. Supp. 2d 508, 513 (S.D.N.Y. 2005) (finding that a five-year delay in adjudicating an asylum application was not an unreasonable delay).  The Court thus grants Defendant's motion to dismiss Plaintiff's APA claim.  This dismissal is without prejudice to renewal, should Plaintiff's application remain pending to an unreasonable degree.

**B.     Mandamus Claim**

The Court turns next to Plaintiff's mandamus claim.  The Mandamus Act gives district courts "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."  28

9

U.S.C. § 1361; *see Liu*, 2020 WL 2836426, at *10 ("The court's authority to grant the requested relief [under the Mandamus Act] depends on the nature of the duty sought to be compelled: relief 'will issue only to compel the performance of a "clear nondiscretionary duty."'" (quoting *Pittston Coal Grp. v. Sebben*, 488 U.S. 105, 121 (1988))). To obtain relief under this Act, a plaintiff must establish that "(1) there is a clear right to the relief sought; (2) the Government has a plainly defined and peremptory duty to perform the act in question; and (3) there is no other adequate remedy available." *Benzman v. Whitman*, 523 F.3d 119, 132-33 (2d Cir. 2008). "Mandamus jurisdiction is closely related to the merits of whether a writ of mandamus should issue." *Aydemir v. Garland*, No. 22 Civ. 100 (PAC), 2022 WL 4085846, at *6 (S.D.N.Y. Sept. 6, 2022) (internal quotation marks omitted).

Here, Plaintiff has available an alternative remedy under the APA, thus depriving this Court of subject matter jurisdiction over her mandamus claim. *See Xu*, 434 F. Supp. 3d at 56; *Liu*, 2020 WL 2836426, at *10; *cf. Cohen v. Jaddou*, No. 21 Civ. 5025 (PAC), 2023 WL 2526105, at *7 (S.D.N.Y. Mar. 15, 2023) (dismissing mandamus claim in an action where the plaintiff sought to compel adjudication of his green card application because an adequate remedy was available under the APA and thus "mandamus relief [was] not available"). "This is true even though Plaintiff failed to adequately plead that alternative remedy." *Cohen*, 2023 WL 2526105 at *7. Accordingly, the Court dismisses without prejudice Plaintiff's mandamus claim for lack of jurisdiction.[5]

---

[5] While the Complaint is unclear as to the precise theory on which mandamus relief is being sought, Plaintiff's Opposition appears to argue only that mandamus relief is warranted because Defendant failed to render a timely decision on her asylum application, which fails given the availability of an alternative remedy for such harm under the APA. *See, e.g.*, Opposition at 4 ("Thus, it is clear that Plaintiff has a viable right to receive a decision under § 1158(a) and, by extension, a right to a timely decision under the APA."). Plaintiff does not seem to be advancing an argument that mandamus relief is appropriate because Defendant failed to meet the forty-five-day deadline for an initial asylum interview or the 180-day deadline for adjudication of an asylum

## C. Declaratory Judgment

The Declaratory Judgment Act does not provide an independent basis for federal jurisdiction.  *See Niagara Mohawk Power Corp. v. Tonawanda Band of Seneca Indians*, 94 F.3d 747, 752 (2d Cir. 1996) ("Section 2201 provides no independent basis for subject matter jurisdiction.").  Having dismissed Plaintiff's APA and Mandamus Act claims, the Court lacks jurisdiction over Plaintiff's request for relief under Declaratory Judgment Act.

## IV. Conclusion

For the foregoing reasons, the Court grants Defendant's motion to dismiss and dismisses without prejudice Plaintiff's Complaint in its entirety.  As discussed, the dismissal of Plaintiff's APA claim is without prejudice to renewal should Plaintiff's application remain pending to an unreasonable degree.  The Clerk of Court is respectfully directed to close this case.

SO ORDERED.

Dated: May 16, 2024
New York, New York

JOHN P. CRONAN
United States District Judge

---

application under 8 U.S.C. § 1158(d)(5).  In the interest of thoroughness, the Court notes that such an argument would plainly fail.  As suggested above, Section 1158(d)(7) bars a plaintiff "from claiming any legally enforceable right to have her application adjudicated within the provided timeframes" in Section 1158(d)(5).  *Xu*, 434 F. Supp. 3d at 56 (cleaned up and collecting cases).  Because mandamus relief is only available where a plaintiff seeks to compel an agent of the United States to perform a duty owed to the plaintiff, and is not available to compel compliance with a statutory obligation when that statute disclaims a private right of action, this Court would lack jurisdiction to issue mandamus relief on account of Defendant's failure to meet Section 1158(d)(5)'s deadlines.  *See id.* at 56-57 (citations omitted).

11